No. 3055

Opinion construing certain provisions of the Teacher
Retirement System of Texas, and holding:

1.  The benefits allocated to a married member of the
    Teacher Retirement System of Texas are not com-
    munity property. Such benefits belong to the
    separate estate of the member.

2.  A husband or wife, who is a member of this System,
    may appoint in writing an individual other than
    a spouse to receive, at the death of the member,
    the residue of his or her benefits in the System,
    whether the same be called "Return Contributions",
    "Retirement Benefits" or "Annuity". Such appoint-
    ment may be revoked, but unless revoked, the Trus-
    tees of the System are authorized to pay such
    benefits to the named appointee.

3.  A husband or wife who has ceased to be a member
    may withdraw from the System such an amount as
    has been credited to the account of the retired
    member. The amount so withdrawn belongs to his
    or her separate estate as the case may be, and
    the other spouse has no interest in or claim to
    the same.

    A divorce would not alter the situation.

OFFICE OF THE ATTORNEY GENERAL

June 1, 1939

Honorable S. M. Brown
Executive Secretary
Teacher Retirement System of Texas
Austin, Texas

Dear Mr. Brown:

        Opinion No. O-129
        Re: Title to contributions to
            Teacher Retirement System

        We acknowledge receipt of your request in behalf
of the Teacher Retirement System of Texas for an opinion
upon the questions contained in your letter, viz.:

1.  "Are the contributions of a member in the Teacher Retirement System considered to be community property if the individual is married?

2.  "If a wife or husband specifies in writing to the Teacher Retirement System that she or he wishes to have the accumulated contributions in the Teacher Retirement System returned to some individual other than the husband or wife in case of death before retirement, is the Teacher Retirement System acting within the law in returning the money in accordance with the request?

3.  "Would a husband or wife of a member, who has ceased to be a teacher and applied for the return of the accumulated contributions, be entitled to any of the funds?

4.  "Would the situation be altered in any way if the husband or wife were divorced but had been married during part of the time that the money was accumulated?"

In your letter, you direct the particular attention of this department to the provisions of Section 5, subsection 6, of the Act in question, and it is apparently on account of the provisions of this part of the Act that you predicate your request for an opinion. It reads as follows:

"Return of Accumulated Contributions -
"Should a member cease to be a teacher except by death or retirement under the provisions of this Act, he shall be paid in full the amount of the accumulated contributions standing to the credit of his individual account in the Teacher Saving Fund. Should a member die before retirement, the amount of his accumulated contributions standing to the credit of his individual account shall be paid as provided by the laws of descent and distribution of Texas unless he has directed the account to be paid otherwise. Seven (7) years after such cessation of service, if no previous demand has been made, any accumulated contributions of a contributor shall be returned to him or to his heirs. If the contributor or his heirs cannot then be found, his accumulated contributions shall be forfeited to the Retirement System and credited to the Permanent Retirement Fund."

There are other related provisions in the Act which will be particularly noted hereinafter.

We have deemed it necessary in due consideration of your questions to refer rather extensively to other pertinent provisions of the Act.

The purposes of this law are stated in Section 2 of the Act, which is as follows:

"A Retirement System is hereby established
and placed under the management of the State Board
of Trustees as hereinafter created for the purpose of
providing retirement allowances and other benefits
under the provisions of this Act for teachers as
defined in this Act. The Retirement System so created
shall be established as of July 1, 1937.

"It shall have the power and privileges of
a corporation and shall be known as the 'Teacher
Retirement System of Texas', and by such name all
of its business shall be transacted, all of its
funds invested and all of its cash and securities
and other property held."

It is provided that the Trustees shall serve with-
out compensation.

Section 6 of the Act, among other things, provides
that the trustees shall designate a medical board to be com-
posed of three eligible physicians who shall pass upon all
medical examinations of members which may be required under
the provisions of the Act, and who shall investigate all
essential statements and certificates by and on behalf of
any member in connection with his application for disability
retirement.

The trustees are required to appoint an actuary
who shall be their technical adviser with respect to the
operation of the funds created under the provisions of the
Act. It is provided that he shall perform such other duties
as are required in connection therewith, and that upon the
establishment of the System, the actuary shall make an in-
vestigation of the mortality, service, and compensation ex-
perience of the members of the System and that he shall make
recommendation to the Board of Trustees with respect to such
matters, and further he shall recommend for adoption such
tables and rates as are required, and that thereupon, the
Board shall adopt and certify rates and as soon as practi-
cable thereafter, the actuary shall make a valuation based
upon such tables and rates of the assessments and liabilities
of the funds created by the Act.

Subsection 15 of Section 6 provides in substance
that in the year 1938 and at least once in each five year
period thereafter, the actuary shall make an acturial inves-
tigation of the mortality, service, and compensation exper-
ience of the members and beneficiaries of the Retirement
System, and shall make a valuation of the assets and lia-
bilities of the funds of the System. In doing so, he shall
take into account the result of such investigation and valua-
tion, and said Board shall adopt for the Retirement System
such mortality, service, and other tables as shall be deemed
necessary. They shall certify the rate per annum which shall

be allowed in calculating amounts of prior-service reserves to be credited to the account of each member after retirement.

The particular and important powers of the Board of Trustees are set forth in Section 7, and so far as necessary to be here noted, they are:

1. They have power to invest and reinvest the funds of the System, including all retirement funds that may be received by the Treasury of the State from contributions of the teachers and employers as provided by the Act, and such funds may be invested in such securities and in accordance with such limitations as are specifically therein defined.

2. They have power to hold, purchase, sell, assign, transfer and dispose of any of such securities, as well as to invest the proceeds of prior investments and any other money belonging to the various funds named in the Act.

3. The trustees annually shall allow regular interest on the mean amount for the preceding year in each of the funds with the exception of the Expense Fund as herein provided, and the amount so allowed shall be annually credited to such respective funds.

There are other powers and duties of the trustees which are important but which need not be noted.

Section 3 of the Act relates to the membership of the Retirement System and provides, in effect, that such membership shall be composed of all persons who are teachers on the date as of which the Retirement System was established as a condition of their employment unless within ninety days after September 1, 1937, a member shall file with the Board a notice of his election "not to be covered in the membership of the System", together with a duly executed waiver of all present and prospective benefits. Beginning as of September 1, 1938, and thereafter any teacher teaching for the first time in Texas shall become a member of the Retirement System as a condition of his employment.

Specific funds set up in the Act are:

1. The Teacher Saving Fund.
2. The State Accumulation Fund.
3. The Annuity Reserve Fund.
4. The Interest Fund.
5. The Permanent Retirement Fund.
6. The Expense Fund.

The first of these funds consist of five per cent of the aggregate of each teacher's annual income, but not to exceed in any one year $180.00. The second is derived from appropriations by the State, which, in effect, shall be in amounts equal to the total payments of all the teachers. There is one other fund which should be particularly noted. It is the "Permanent Retirement Fund", as to which it is pro-

vided that it shall consist of accumulated gifts, awards, funds, and assets accruing to the Retirement System not specifically required by other funds created by the Act. Its purpose is to provide a contingent fund out of which special requirements of other funds may be covered. The principal of this fund is to be held and dedicated as a perpetual endowment to the Retirement System, and it shall not be diverted or appropriated to any other purpose. All regular interest credited to it and excess interest earnings transferred to it shall be held as an interest reserve account, from which payments shall be made as follows:

(a) The trustees shall receive and transfer such amount as may be required to guarantee regular interest on the mean amounts of investments of the funds created by the Act, excepting the Expense Fund.

(b) They shall transfer annually from said interest reserves to the Expense Fund such an amount as is required to provide for the administration and maintenance of the System.

The Act contains a number of terms which are defined and are significant, such as "Beneficiary", "Annuity", "Retirement Allowance", "Disability Retirement", and "Actuarial Equivalent", which last means a benefit computed upon the basis of such mortality tables as may be adopted by the trustees, together with regular interest thereon.

It will thus be seen from the foregoing statements that the title to the total contributions or payments as and when made by the members to the Teacher Retirement System pass absolutely to that System to be administered by the trustees in the interest of such members. The particular benefits which are granted and promised to such members are either payable to them during their lives or to their appointees or to their estates upon their respective deaths, particularized under the following titles:

1. "Allowance for Service Retirement". This is an allowance in the form of an annuity which shall be the actuarial equivalent of the sum of the teacher's savings and the State Reserves due him on account of his accepted membership in the System to be computed upon his accumulated contributions credited to his account in the Teacher Saving Fund at the time of his retirement, together with such additional amount as he may be found entitled to receive from the State Accumulation Fund as of the date of the teacher's retirement. And further, if the teacher has a valid prior-service certificate, he shall be entitled to an additional annuity in an amount which shall be the actuarial equivalent of an annuity of 1% of his average prior-service compensation, multiplied by the number of years of his Texas service as shown in his prior-service compensation certificate.

2. "Disability Retirement Benefit". As to which the Act provides that if a member has had 20 or more years of creditable service, he may be retired by the trustees on an allowance in an amount determined according to a stated computation, conditioned upon the Medical Board first certifying that he is mentally or physically incapacitated for further performance of his calling, and that such incapacity is probably permanent. Whereupon, he shall receive a Service

Retirement Allowance, if he has attained to the age of 60 years, otherwise, a Disability Retirement Allowance which shall be the actuarial equivalent of the sum of funds derived from sources as follows:

(a) From accumulated contributions by the member standing to his account in the Teacher Saving Fund at the time of his retirement; (b) an additional amount from the State Accumulation Fund equal to that derived from the members; and (c) if he has a prior-service certificate, he shall receive an additional amount which shall be equal to 50% of such prior-service as provided in the Act.

The Act also provides for a form of benefits denominated "Return of Accumulated Contributions", the provisions as to which are set out in the first part of this opinion, and they need not be here repeated.

Finally, insofar as the benefits to the members are concerned, they are given the right to choose certain optional allowances, whereby any member may elect to receive his benefits in the form of a retirement allowance payable throughout his life in lieu of a lump sum; or to receive the actuarial equivalent at that time of his predetermined benefits in a reduced allowance payable throughout his life with the provision that: (1) upon his death, the residue of such allowance shall be continued throughout the life of, and paid to, such person as he shall nominate by written designation duly acknowledged and filed with the trustees at the time of his retirement. There are certain other options which for the purposes of this opinion need not be noted.

The foregoing analysis of certain parts of this statute has been made solely in order to determine the proper answers that may be given to the questions submitted to this Department, and verbal accuracy is not to be implied.

In construing any statute, the first rule to be observed is that if the words of the statute are plain and definite, it must be interpreted in accordance with the maxim, "The Law Is Thus Written", meaning that a literal interpretation must be given to the words of the statute, unless to do so will lead away from the intent and purpose of the Act as a whole and produce an absurd result.

Of equal importance is another rule which is that a statute must be interpreted so as to make operative in a practical way the purpose of the Legislature, and so as to secure to the class or classes of persons in whose behalf the statute was enacted the benefits intended to be conferred. Every provision, clause or word of the statute will be construed with reference to its leading idea and general purpose, and brought so far as possible in harmony therewith. So, if a statute is susceptible of any other reasonable interpretation, it will not be construed so as to make it impractical of enforcement. In all cases the Courts will, if possible, avoid a construction

that will result in conflict, confusion, or delay in the enforcement of the law, or that will excite cupidity in the minds of a class of persons without the provisions of the law, and that will promote and encourage litigation. With equal or greater reason, it may be said that it is not permitted to any one to legislate into a statute words or implications foreign to or variant with the plain language and purpose of the Act, and which, if so incorporated, would make the statute mean something different from that which was intended by the Legislature, and which would tend to promote all or some of the evils and difficulties in its enforcement as hereinabove mentioned.

In support of these propositions, the following authorities are cited: Shipley v. Floydada Independent School District, 250 S. W. (Comm. App.) 159; Trimmier v. Carlton, 116 Tex. 572, 269 S. W. 1070-1074; Freels v. Walker, Commissioner Gen. Land Office, 26 S. W. (2d) 627, 630 (writ refused); Winder v. King (Comm. App.) 1 S. W. (2d) 587; State v. Hale, 96 S. W. (2d) 135, 136; and 39 Tex. Jur. pp. 221-222.

Applying what has just been said to the legislation which brought into existence the Teacher Retirement System of Texas, it is the opinion of the Attorney General's Department that the provisions of this statute are plain and unambiguous as concerns those sections upon which the foregoing questions are properly predicated, and that the same must be construed accordingly. We advise, therefore, that it was the manifest purpose of the Legislature that the Board of Trustees who are charged with the administration of this System shall deal primarily with the beneficiaries in their respective sole and individual capacities in all matters respecting the administration of the law and about which such beneficiaries are concerned. Whenever, therefore, occasion shall arise for the payment or discharge, in whole or in part, of any of the defined benefits, such payment must be made to the interested member in person so long as he or she is alive and of sound mind, regardless of whether such member is married or single, male or female, or that he or she may have been married and subsequently divorced. Such are the express directions contained in the statute, and they must be carried out by the trustees, not only because they are commanded so to do, but because they constitute contractual obligations entered into between the teachers and the State of Texas, in its capacities as "Employer" and as a contributor to the funds of the System, unless as implied in the first question submitted to this Department, the Legislature in so enacting has violated some provision of the Constitution of this State. No one is required to administer or incur a responsibility under an Act or any section of an Act of the Legislature which is void because prohibited from becoming a law by the Constitution.

Careful consideration, therefore, has been given to the constitutional phase thus implied, and for reasons as more particularly shown hereinafter, it is the opinion of this Department that the statute is not unconstitutional in respect to any of its operative provisions now under review.

While it is the opinion of this Department that the benefits provided for in this Act belong to the estate

of the member to whom the same shall have been allotted and credited by the trustees of the System, and that the husband or wife of the member in virtue of the community laws has no claim to such benefits, yet it is not believed that every ultimate issue of ownership or title with respect to these matters is necessary to be determined by the trustees as a condition to their lawful administration of the affairs of the System. The trustees may safely deal with the members upon the basis of reasonable presumptions and prima facie indicia of titles. It is well to bear in mind that the Constitution no where defines "Community Estate". It is only mentioned one time in the Constitution and then in connection with the section which defines the separate estate of the wife, and which is Article 16, Section 15, and which after defining said estate, provides that:

> ". . . and laws shall be passed more clearly defining the rights of the wife in relation as well as to her property as that held in common with her husband."

Nor is any mention made in the Constitution of the husband's separate estate. Consequently, that estate and the community property of the spouses are both of statutory definition. Likewise, the ordinary legal presumption which is to the effect that all property in possession of either the husband or wife at the time of the dissolution of marriage shall be presumed to belong to the community estate, as well as that respecting the husband's control of the community estate during the lives of the spouses, are purely of statutory sanction. Consequently, the Legislature may at any time enact regulations respecting community estates by virtue of which the control of certain types of community property may be taken away from the husband and be vested in the wife. With equal constitutional liberty of action, the Legislature may provide by law that the existence of certain predetermined facts shall create a presumption of separate ownership in the wife and that she may be dealt with upon the basis of such presumption.

There are familiar instances of legislation such as just mentioned. One of these has to do with deposits in a savings bank. Article 409, R. C. S. 1925, provides in substance that: When a deposit shall be made by or in the name of a female, she then being or thereafter becoming married, such deposit shall be held for her exclusive right and benefit, and that it shall be paid, together with interest thereon, to the person in whose name the deposit shall have been made, and that the receipt or acquittance of such female shall be a valid release and discharge from such deposit, or any part thereof, to the corporation wherein such deposit has been made.

Another instance of the Legislature creating such a presumption is Article 4736a, R. C. S. 1925, as amended, and which provides in substance that whenever any person shall procure the issuance of a policy of insurance on his or her life in any legal reserve life insurance company and shall designate, in writing, the beneficiary to receive the proceeds thereof, the company issuing the policy in the absence of any notice of adverse claim to the proceeds, may pay the proceeds upon the death of the insured to the person so designated as beneficiary, and such payment shall discharge the company from all liability by reason of such policy.

Hon. S. M. Brown, June 1, 1939, Page 9

Another such instance is shown by Article 4622, R. C. S. 1925, which provides in substance that funds on deposit in any bank, whether in the name of the husband or wife, shall be presumed to be the separate property of the one in whose name it stands, regardless of which one made the deposit, and that unless the bank is notified to the contrary, it shall be governed accordingly in honoring checks on the account.

The foregoing illustrations demonstrate that the Legislature has with legal impunity enacted laws which provide that the existence of a defined status or the existence of certain facts shall have the effect to create a legal presumption of separate ownership of property in either the husband or wife. The least that may be said in this connection respecting the statute under consideration is that it affords another instance of such legislation.

It is settled law that a recital in a deed to a married woman to the effect that the conveyance is for her separate use and estate removes the presumption that the property conveyed belongs to the community estate and creates a presumption that it belongs to the separate estate of the wife. Also, it is held that the circumstances of such a conveyance may establish a gift by the husband to the wife in a case where the purchase price actually is paid with the community funds and the conveyance to the wife is by a person other than the husband. McCutcheon v. Purinton, 84 Tex. 603, 19 S. W. 710.

Therefore, we advise that when the trustees shall have made a payment of the benefits provided for in this Act to any beneficiary, a receipt from such beneficiary will operate as a discharge to the trustees to the extent of the amount of such payment regardless of his or her marital status.

As above stated, however, it is the opinion of this department that the benefits actuarially determined to have accrued to a married member of this System, belongs solely and actually and not presumptively to such member, and we will proceed to assign the reasons for so holding. But before doing so, we call attention to the fact that the first question submitted to this department is inaptly stated, and that it should read rather as follows:

"Are the benefits which shall have been legally allocated to a teacher member in the Teacher Retirement System of Texas community property if the teacher is married?"

This is deemed proper for the reason that the benefits which are returned or paid to the teacher are not the ear marked contributions which he may have paid into the funds of the System, but they consist of such an amount as shall have been actuarially determined to be his prorata of the earnings from the sum total of the contributions from all the teachers of the State when added to by the earnings from the total of the appropriations made by the State into the funds of the System, and from such other sources as are contemplated by the Act.

Loosely speaking, it may be said that the Teacher Retirement System of Texas is a legal hybrid with respect to its corporate entity and the business which it has been authorized and commanded to conduct through the medium of trustees for the sole benefit of the teachers of the State. However, we think it is apparent that the dominant feature of the statute in its operative phases is a form of social insurance, which may be classified as old age insurance and disability insurance payable to the insured member in the form of benefits during his life, either in a lump sum or as per the terms of an annuity and containing, also, elements of ordinary life insurance. There is this further essential element, however, and that is that the amounts of money which the State from time to time is obligated to appropriate into the Treasury of the System shall be equal to the total payments of all the teacher members, and also that for the purpose of organizing the System and establishing an office, the Legislature appropriated the sum of $25,000.00. Such sum, therefore, is the original or starting capital of the organization, and the subsequent and additional appropriations by the State and the individual payments made by the member teachers simply add to the capital of the System and enable it - not the teachers - to make money, by means of which the benefits actuarially determined as to amounts are eventually upon stated contingencies paid to the members or to their estates. Regarded as an indirect pension, these benefits, being gifts, satisfy the Constitutional provision which defines the separate estate of the wife by declaring that "any property, both real and personal of the wife, owned or claimed by her before marriage and that acquired afterwards by gift, devise or descent, shall be her separate property." Article 16, Section 15.

This provision was incorporated into the Constitution as a shield of protection to the wife, and while it necessarily limits her separate estate to those properties which are acquired through the several sources defined in the Constitution, yet this section has not received and should not receive a narrow construction, especially as respects gifts to the wife. Any kind of property whose inception of title is by gift, by whatever form it may take and by whatever act of the donor the gift is indicated, satisfies the Constitution, and vests the title thereto in her separate estate, whether the donor is the husband or some other person. As between the husband and wife, the courts have in a variety of cases upheld the wife's title when based upon an implied gift from the husband. This is especially true when the indicia of title appears to be already in her separate estate.

It should be here noted that the word "acquired" as used in the above section of the Constitution means the inception of the title to the property. As applied to the subject under discussion, therefore, it means that if the wife before marriage became a member of the Teacher Retirement System, that fact alone determines the status of the benefits therein as being in her separate estate. Her subsequent marriage would not affect that title. The law as to this matter is well settled, and requires no further discussion or citation of authorities.

Hence, the principal question to be determined and the one which has given this Department some concern is that respecting the character of title which a married woman acquires to benefits in the Teacher Retirement System, when during marriage she becomes, for the first time, a member of that System. The primary sources of the funds from which the benefits or insurance are to be paid to the members of this System have already been noted, and they constitute a material consideration in determining the nature and character of title as respects such benefits. If to these considerations, a gift from the husband is required to complete title in the member who is a married woman to the respective benefits allocated to her, we think such gift will necessarily be implied. When a married woman becomes a teacher in the schools of Texas, and especially if she continues to teach for any length of time, the law considers that it is by the consent, express or implied, of the husband. It follows as a natural consequence that the husband knew or by law is charged with the knowledge that a small portion of the wife's earnings would be invested monthly in the Teacher Retirement System. He is further charged with knowledge of the terms of the statute upon which the organization of this System is based that his wife's allocated benefits are prima facie vested in her separate estate by the very terms of the law. As to these conditions of the wife's employment as a teacher, a husband may, if he will, at the proper time, object but lacking such objection, he, by implication of law, consents that his wife so long as she remains such teacher may contribute monthly a small percentage of her earnings as for her separate use and benefit to the Teacher Retirement System. Gifts thus established by implication of law from the husband to the wife have frequently received the sanction of the courts in similar situations. Saylor v. Saylor, 20 S. W. (2d) 222; Kellett v. Price, 95 Tex. 160, 66 S. W. 51,54; Daggett v. Worsham, 264 S. W. (C. A.) 180; Dority v. Dority, 70 S. W. 338, Aff. 96 Tex. 215, 71 S. W. 950; Brown v. Fore (Com. App.) 12 S. W. (2d) 114; Teague v. Fairchild (Com. App.) 15 S. W. (2d) 585, 589; Sorenson v. City Nat'l Bank, 121 Tex. 476, 49 S. W. (2d) 817; 23 Tex. Jur. pp.68-74.

"There is no limitation whatever upon the separate estate thus acquired as to the source of the donation. It is only required under the general principle that there be an authorized donor and a competent donee - in other words, a gift. Neither is there any limitation whatever as to the character of property that may be thus donated. It may consist of real property, personal property or mixed property, of choses in possession or in action. It may consist of anything recognized by law as property or a property right. The gift may be express or implied; it may be by parol or in writing; it may be either inter vivos or cause mortis. Whenever the transaction meets the general requirements of law as to gifts . . . and the donee is a married person, the subject matter of a gift becomes at once a part of his (or her) separate estate." 23 Tex. Jur. p. 68 and authorities cited in the notes.

And as applicable to either the husband or the wife, absent fraud, either may donate to the other a portion of the community funds to be legally invested for the separate use of one or the other spouse, or both.  23 Tex. Jur. pp.156-157.

With respect, therefore, to a husband who is a member of the Teacher Retirement System, there is no trouble in determining that the benefits that are allocated and payable to him, as provided in this law, constitutes his separate property. In addition to what has already been said, the principles of law are here applicable, which have governed the courts in holding that the proceeds of life insurance accruing from policies taken out by the husband and payable to his estate belong to his separate estate, notwithstanding the premiums have been paid from community funds.  It is not necessary to extend this opinion to give the reasons assigned by the courts in coming to that conclusion.  It is sufficient to say that the law has thus been declared by the Supreme Court of this State. Martin v. McAllister, 94 Tex. 567, 63 S. W. 624; Fain v. Fain, 93 S. W. (2d) 1226 (Writ of error dismissed); Jones v. Jones, 146 S. W. (C. A.) 265; Whiteselle v. Northwestern Mutual Life Insurance Co., 188 S. W. 22, Aff. 221 S. W. 575; Hatch v. Hatch, 80 S. W. 411 (Writ of error refused).

Some of these cases also announce the doctrine, which is settled law in this state, that the dissolution of the marriage by divorce does not affect such separate interest of the spouse in the policy of insurance, and also that after the divorce, neither spouse has any insurable life interest in the life of the other.

With respect to the provision of the Act which declares that a member while living may appoint in writing a person to receive at the death of the member the residue of his or her benefits, whether called "Returned Contributions", "Retirement Benefits" or "Annuity", it is to be noted that such appointment does not give to the appointee any present interest in such benefits during the life of the member.  As to such appointee the title to such residue does not vest absolutely until the death of the member.  If such an appointment is made, however, and it is not subsequently revoked by the member, it would entitle the appointee to receive such residue of the member's benefits for the reason that this Act specifically so provides.  In this respect the statute is similar to the provisions usually contained in ordinary life insurance policies, which authorize the insured to appoint, in writing, a substitute beneficiary. Such an appointment, as provided for in this Act, it is believed, may be recalled or revoked by the member.

It should be added that so much of these benefits as the Act provides may pass to the estate of the member upon his or her death is an inheritable estate, and may freely be disposed of by the Will of the member.

Therefore, subject to the definition of the terms as indicated in this opinion, the answer to your first question is, that this property does not belong to the community estate, but that it does belong to the separate estate of the teacher.

In answer to your second question, you are advised that the husband or wife may so specify in writing.

The answer to the third question is: The husband or wife, as the case may be, is entitled to so much of the contributions, or rather so much of the funds, actuarially determined, as is in accordance with the specific provisions contained in Section 5 of this Act, and the other spouse has no interest in the same.

The answer to the fourth question is: A divorce would not alter the situation.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By   W. F. Moore,
    First Assistant

WFM:BT


This opinion has been considered in conference, approved, and ordered recorded.

GERALD C. MANN
ATTORNEY GENERAL OF TEXAS